IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANNA KUULEIONAONA RICHARDSON,<br><br>               Plaintiff,<br><br>   vs.<br><br>THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OC8, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-OC8; AND SHELLPOINT MORTGAGE,<br><br>               Defendants. | CIV. NO. 19-00374 JMS-WRP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 23 |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 23

## I. INTRODUCTION

Pro se Plaintiff Anna Kuuleionaona Richardson ("Plaintiff") asserts numerous claims against the lender and servicer of her residential mortgage—Defendants The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificates, Series 2006-OC8 ("BONY Mellon"); and

NewRez LLC fka New Penn Financial, LLC dba Shellpoint Mortgage Servicing ("Shellpoint") (collectively, "Defendants").[1]  ECF No. 1.

By the instant Motion, Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that Plaintiff failed to state a claim upon which relief can be granted.  ECF No. 23.  The court finds this matter suitable for disposition without a hearing.  *See* Local Rule 7.1(c).  For the reasons discussed below, the court GRANTS Defendants' Motion to Dismiss.

## II.  BACKGROUND

### A.    Factual Background[2]

To summarize the relevant background, the court relies on allegations in the Complaint, as well as matters of public record in the State of Hawaii Bureau of Conveyances.[3]

---

[1] The court refers to both Defendants by the corrected names they provided in their Motion.  *See* ECF No. 23 at PageID #97.

[2] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.") (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); *Kawelo v. Nationstar Mortg. LLC*, 2018 WL 4354295, at *1 n.1 (D. Haw. Sept. 12, 2018) (taking judicial notice of Bureau of Conveyance documents).

On or about August 25, 2006, Plaintiff executed a promissory note (the "Note") in exchange for a loan in the amount of $352,000 from Countrywide Home Loans, Inc. ("Countrywide").  *See* ECF No. 1 at PageID #3-4; *see also* Defs.' Ex. 1, ECF No. 23-3 at PageID #128 (the "Mortgage").  The loan was secured by a mortgage on Plaintiff's residential property (the "Mortgage") located at 41-581 Inoale Street, Waimanalo, Hawaii 96795 (the "subject property").  *See* ECF No. 1 at PageID #3-4; *see also* Defs.' Ex. 1, ECF No. 23-3 at PageID #128-29.  The Mortgage, recorded in the Bureau of Conveyances on September 6, 2006, *see* ECF No. 23-3 at PageID #127, identifies Plaintiff as the "Borrower," Countywide as the "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee "solely as nominee for Lender and Lender's successors and assigns."  *Id.* at PageID #128.  The Mortgage provides to MERS and its successors and assignees the power to sell the subject property to effectuate repayment of the loan and specifies that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [Plaintiff]."  *Id.* at PageID #138.  On March 20, 2018, MERS assigned the Mortgage to BONY Mellon, and on March 22, 2018, the Assignment was recorded at the Bureau of Conveyances.  *See* ECF No. 1 at PageID #4; ECF No. 23-4 at PageID #149-51 (the "Assignment").  The Complaint identifies Shellpoint as the current servicer of the loan.  ECF No. 1 at PageID #3.

3

Although not entirely clear, the Complaint alleges that Plaintiff was not qualified for the loan when she obtained it, was unable to negotiate a loan modification, was not notified that her loan was purchased on one or more occasions, defaulted on the loan, and that Shellpoint issued a notice of intent to foreclose.  *See id.* at PageID #4-5, 9-10, 22.  The Complaint relies heavily on a purported "forensic audit" of the subject property issued by "Certified Forensic Loan Auditors."  *Id.* at PageID #3-18.  The Complaint's factual allegations appear to be excerpts from the unattached "forensic audit" and are confusing, conclusory, and largely indecipherable.[4]  Taken as a whole, however, the Complaint alleges that Defendants lack any right to foreclose the subject property.

On July 11, 2019, Plaintiff initiated this action by filing the Complaint, which alleges the following claims: (1) "Lack of Standing/Wrongful Attempt to Foreclosure;" (2) "Fraud in the Concealment;" (3) "Fraud in the Inducement;" (4) "Unconscionable Contract;" (5) "Breach of Contract;" (6) "Breach of Fiduciary Duty;" (7) "Quiet Title;" (8) "Slander of Title;"

---

[4] For example, the "auditor" opined that (1) the "chain of title to [Plaintiff's] Mortgage Deed is clouded" as a result of "deception and fraudulent assignments to conceal the transfer history and identities of hidden investors;" and (2) there is "no evidence of transfer and assignment of the Note."  ECF No. 1 at PageID #4.  And the Complaint alleges that based on the "auditor's" determination that there was "notarization fraud on [Plaintiff's] chain of title," there was "a violation of Federal Rule 60(b)- FRAUD UPON THE COURT."  *See id.* at PageID #10.  That allegation is followed by eight pages of what appear to be excerpts from court decisions in unrelated cases.  *See id.* at PageID #11-18.

4

(9) "Declaratory Relief;" (10) Violation of the Consumer Credit Protection Act

("CCPA"); and (11) "Violation of Federal Regulations, Regulation X, 12 C.F.R.

§ 1024.41(b)(2)(i)(A)." *Id.* at PageID #18-38 (emphases omitted).  Plaintiff seeks

(1) a declaration that Defendants lack any interest in the subject property and

Mortgage and therefore may not foreclose the subject property; (2) quiet title to the

subject property; (3) a refund of Plaintiff's payments to Defendants; and

(4) damages in an amount between $100,000 and $2 million, plus interest and

attorney's fees.  *Id.* at PageID #38-39.

## B.    Procedural Background

Defendants filed the instant Motion on February 25, 2020.  ECF No.

23.  On March 11, 2020, Plaintiff sought an extension of time to file her

Opposition, or alternatively, to amend her Complaint.  ECF No. 24.  On March 12,

2020, the court extended the deadline for Plaintiff to file her Opposition from April

3, 2020 to May 1, 2020.  ECF No. 26.  On May 1, 2020, Plaintiff sent an email to

the court indicating that she would stand on her Complaint and was not seeking

further extension; thus, the court construes Plaintiff's email as her Opposition.  *See*

ECF No. 29.  Defendants filed a Reply on May 11, 2020.  ECF No. 30.  Pursuant

to Local Rule 7.1(c), the court finds this matter suitable for disposition without a

hearing.

## III.  <u>STANDARDS OF REVIEW</u>

**A.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.3d 696, 699 (9th Cir. 1990)).

Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (citations and quotations omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation signals

omitted).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also*

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## B.    Pro Se Pleadings

Because Plaintiff is proceeding pro se, the court liberally construes the

Complaint and resolves all doubts in her favor.  *See Erickson v. Pardus*, 551 U.S.

89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations

omitted).  The court must grant leave to amend if it appears that Plaintiff can

correct the defects in her Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000), but if a claim or complaint cannot be saved by amendment, dismissal with

prejudice is appropriate.  *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196

(9th Cir. 2013); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532

(9th Cir. 2008) (reiterating that a district court may deny leave to amend for,

among other reasons "repeated failure to cure deficiencies by amendments

previously allowed . . . [and] futility of amendment") (citation omitted).

## C.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments

of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity."  "Rule 9(b) requires particularized allegations of the

circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.   Thus, Plaintiff's Complaint must include "the who, what, when, where, and how" of the misconduct alleged. *Vess v. Civa-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).   However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed.").

## IV.  DISCUSSION

### A.    Rule 8

Plaintiff's Complaint fails to comply with Rule 8.  First, the Complaint refers to "Defendants" without specifying which Defendant engaged in what conduct, and/or includes allegations against entities not named as parties in this case.[5]  Second, the Complaint fails to include sufficient *factual* allegations to support each claim.  To the contrary, the Complaint is replete with mere legal assertions and/or allegations that are nonsensical, speculative, conclusory, and/or

---

[5] The Complaint contains allegations against MERS, Countrywide, and CitiMortgage, Inc., none of whom are named in the caption or identified as a party in the "PARTIES" section of the Complaint.  *See, e.g.*, ECF No. 1 at PageID #8-10, 21, 35-36.

largely based on conjecture and opinion.[6]  Such allegations fail to provide any justification for relief.

In short, the Complaint fails to comply with Rule 8's requirements that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought."  Fed. R. Civ. P. 8(a).  In addition, for the reasons set forth below, each specific claim in the Complaint fails to state a valid claim.

**B.     Count 1: "Lack of Standing/Wrongful Attempt to Foreclose"**

Count 1 is based on Plaintiff's contention that Defendants cannot enforce the Mortgage because they lack any title, interest, or right in the Mortgage and subject property.  To support such contention, Plaintiff alleges that MERS lacked authority to assign the Mortgage, that the Assignment of the Mortgage separated it from the Note, and therefore, Defendants "failed to perfect any

---

[6] Examples include, but are not limited to, the following allegations:  (1) "Countrywide . . . illegally, deceptively, and/or otherwise unjustly qualified Plaintiffs for a loan which Countrywide knew or should have known that Plaintiffs could not qualify for or afford," ECF No. 1 at PageID #9-10; (2) "Defendants knew of [BONY's] actions and participated in them," *id.* at PageID #10; (3) "Defendants . . . have failed to perfect any security interest in the [subject property]," *id.* at PageID #18; (4) "MERS lacks the authority under its corporate charter to foreclose a mortgage," *id.* at PageID #19; (5) "[a]ny attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law," *id.* at PageID #21; and (6) "[BONY] was paid in full for their Accommodated capacity to the Tangible Note and Mortgage/Deed of Trust when it sold and relinquished its interest in the Plaintiff's real property to [BONY]," *id.* at PageID #29.

security interest" in the subject property.  *See* ECF No. 1 at PageID #18-22.  As

discussed below, Plaintiff relies on legal theories that courts have rejected

repeatedly.

       Numerous courts within this district have ruled that, except under

circumstances not alleged here,[7] a borrower lacks standing to challenge a mortgage

assignment to which she is neither a party nor an intended beneficiary.  *See, e.g.*,

*Amina v. Bank of N.Y. Mellon*, 2015 WL 84760, at *8 (D. Haw. Jan. 7, 2015)

(citing cases); *Dias v. Fed. Nat'l Mortg. Ass'n*, 990 F. Supp. 2d 1042, 1049-50 (D.

Haw. 2013) (explaining that "[i]n light of the express disclosures in the Mortgage

giving MERS the authority to act on behalf of [the lender] and the transfer of the

Mortgage to [another entity], [the plaintiff] has no basis to challenge the

Assignment," and citing cases).  Further, "[c]ourts have recognized that the

securitization of a mortgage loan does not undermine a lender's right to foreclose

on the mortgaged property."  *Sanders v. Tirello*, 2020 WL 3451998, at *4 (D. Ariz.

June 24, 2020) (citing cases); *see also Duarte v. Bank of Am.*, 2011 WL 1399127,

at *7 (D. Haw. Apr. 12, 2011) (noting that courts routinely "reject[]

---

[7] Courts have permitted a borrower to challenge an assignment made by an entity that no longer existed at the time of the purported assignment.  *See, e.g.*, *Reyna v. PNC Bank, N.A.*, 2020 WL 2309248, at *7 (D. Haw. May 8, 2020) (citing cases).  Plaintiff does not allege facts showing that this exception applies.

claims . . . based on an erroneous legal theory that the securitization of a mortgage loan renders a note and corresponding security interest unenforceable and unsecured") (citations and quotation marks omitted).  And the Ninth Circuit has held that splitting a promissory note from the mortgage or deed of trust securing it "only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the [security instrument] are not agents of the lenders."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011).

Here, the recorded Assignment expressly provides that MERS, as nominee for Countrywide, transferred all its "right, title and interest" in the Mortgage to BONY on March 20, 2018.  ECF No. 23-4 at PageID #150-51.  And Plaintiff does not allege any facts suggesting that she is a party or intended beneficiary of this Assignment.  Thus, Plaintiff lacks standing to challenge the Assignment.

Moreover, "there is no such thing as a claim for 'lack of standing.'" *Wilson v. Gov't Nat'l Mortg. Ass'n*, 2018 WL 2293929, at *4 (D. Haw. May 18, 2018) (citing *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1143 (D. Haw. 2011) ("[A] claim for 'lack of standing' makes no sense against a defendant. Rather, standing is a requirement for a plaintiff in order to proceed in a lawsuit.")). And the Complaint fails to allege any facts about a pending or completed foreclosure proceeding, or of any wrongdoing by either Defendant in connection

11

with a foreclosure proceeding. Thus, Plaintiff has failed to state a plausible claim for lack of standing and/or wrongful foreclosure. Count 1 is DISMISSED. Because there is no cause of action for lack of standing, such claim is DISMISSED without leave to amend. But because Plaintiff *might* be able to allege facts showing a Defendant's wrongful conduct in connection with a pending or completed foreclosure, Plaintiff's claim for wrongful foreclosure is DISMISSED with leave to amend.

## C. Counts 2 and 3: "Fraud in the Concealment" and "Fraud in the Inducement"

Counts 2 and 3 allege fraud in the origination of the Mortgage (Count 2) and in connection with alleged misrepresentations regarding Defendants' intent to foreclose (Count 3). *See* ECF No. 1 at PageID #22-27. More specifically, Count 2 alleges that BONY Mellon "concealed . . . terms of the Mortgage," including the existence of a "third-party Sponsor Bank warehouse lender" and "terms of the Securitization Agreements," and that "at the original closing on 07/07/04 both Plaintiff's signatures were forged on the original note." *Id.* at PageID #23-24. And Count 3 alleges that Defendants "misrepresented" their interest in the subject property and their right to "exercise the power of sale provision contained in the Mortgage/Deed of Trust." *Id.* at PageID #25. Count 3 further alleges that Defendants made "material misrepresentations . . . in order to induce Plaintiff to submit to the foreclosure on the [subject property] as opposed

12

recovering from predecessors in the § 1031—Exchange on the Payment Intangible

Obligation."  *Id.* at PageID #26.

Aside from being confusing, nonsensical, and/or conclusory,[8]

Plaintiff's allegations simply do not contain the level of specificity required by

Rule 9(b) to plead a fraud claim.  *See* Fed. R. Civ. P. 9(b); *In re GlenFed, Inc. Sec.*

*Litig.*, 42 F.3d at 1547-48; *Vess v. Civa-Geigy Corp. USA*, 317 F.3d at 1106.  For

this reason alone, Counts 2 and 3 are DISMISSED with leave to amend.  Plaintiff

is granted leave to amend to allege specifically what each Defendant did, said, or

---

[8] For example, the Complaint alleges, contradictorily, that Countrywide originated the loan with Plaintiff and that BONY Mellon is the "successor in interest to Countrywide/Bank of America," but also that during the loan origination negotiations, BONY Mellon concealed terms of the Mortgage and "intended to induce Plaintiff" to "pledge[] a security agreement to [BONY Mellon]."  ECF No. 1 at PageID #8-10, 23-24.  In addition, the Complaint nonsensically and conclusorily alleges that BONY Mellon "concealed . . . terms of the Mortgage," such as that

> Plaintiff . . . would accept ownership of the real property collateral
> evidenced by the Warranty Deed for executing an accommodation
> negotiable instrument and pledge security agreement on behalf of
> [BONY Mellon], the Accommodated party for the purpose of a
> material variation to the purported contract in which Plaintiff
> would be acting as a ***Guarantor*** for [BONY Mellon], the
> Accommodated party to use Plaintiff's accommodation party's
> property to put the accommodated into funds as surety and a
> personal property security interest in Plaintiff's pledged security
> instrument as collateral to secure their account debtor status for the
> purpose of a § 1031—Exchange (table funded) transaction for a
> service release premium shortly after the closing of the purported
> loan.

*Id.* at PageID #23.  And Count 3 alleges nonsensically and conclusorily that BONY Mellon is "attempting to collect on an intangible debt obligation via the § 1031—Exchange to which [it has] no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property."  *Id.* at PageID #26.

concealed, when they took those actions, and how those statements, actions, or

omissions harmed Plaintiff.  And because claims involving fraud in the inducement

based on misrepresentation or concealment, as alleged in Counts 2 and 3, are

subject to a six-year statute of limitations, *see Hancock v. Kulana Partners, LLC*,

145 Haw. 374, 382, 452 P.3d 371, 379 (2019) (holding that "HRS § 657-1(4)'s six-

year statute of limitations applies to a claim that a deed has been procured through

fraud . . . in the inducement"), Plaintiff must also allege facts showing that her

claims accrued within the limitation period.

**D.     Count 4: "Unconscionable Contract"**

          In Count 4, Plaintiff asserts various allegations against BONY Mellon

in connection with the "origination of the purported loan," in apparent

contradiction to her allegations that Countrywide originated the loan and

Mortgage.  *See* ECF No. 1 at PageID #8-9, 27-28.  More specifically, the

Complaint alleges that BONY Mellon failed to disclose certain information

regarding the loan and its role in the loan process and "intended to exploit

Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject

property," resulting in "Plaintiff being forced, tricked, and mislead into parting

with [her] property."  *Id.* at PageID #27-28.

          Unconscionability, however, is not properly asserted as an

independent claim; rather, it is generally asserted as a defense to an action to

14

enforce a contract.  *See Ramos*, 810 F. Supp. 2d at 1141 (citing cases).  Further, "a determination of unconscionability . . . requires a showing that the contract was both procedurally and substantively unconscionable when made, but there may be exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Balogh v. Balogh*, 134 Haw. 29, 41, 332 P.3d 631, 643 (2014) (citation and internal brackets and quotation marks omitted).

Here, even assuming that Plaintiff could state a claim for unconscionability, the Complaint does not clearly identify to what contract or specific contractual provisions her allegations relate.  Nor does the Complaint allege facts from which the court could reasonably infer unconscionability.  Thus Count 4 is DISMISSED.  And because unconscionability may not be asserted as a separate, affirmative claim, it is DISMISSED without leave to amend.

**E.     Counts 5 and 6: "Breach of Contract," and "Breach of Fiduciary Duty"**

In Counts 5 and 6, Plaintiff alleges that Defendants breached their fiduciary duties to Plaintiff and breached the release provision of the Mortgage. More specifically, Count 5 alleges that BONY Mellon "was paid in full . . . when it sold and relinquished its interest in [the subject property] to [BONY Mellon]," but "failed to satisfy, release and reconvey" the beneficial security interest in Plaintiff's pledged Mortgage/Deed of Trust upon payment.  ECF No. 1 at PageID

#29.  And Count 6 alleges that Defendants breached their fiduciary duties when BONY Mellon "failed to . . . satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium." *Id.* at PageID #30.

        To state a breach of contract claim under Hawaii law, Plaintiff must allege "(1) the contract at issue; (2) the parties to the contract; (3) whether [P]laintiff performed under the contract; (4) the particular provision of the contract allegedly violated by [BONY Mellon]; and (5) when and how [BONY Mellon] allegedly breached the contract." *Chavez v. Deutsche Bank Nat'l Tr. Co.*, 2019 WL 2330885, at *6 (D. Haw. May 31, 2019) (citations and internal quotation marks omitted).  And the law is "well-settled . . . that generally a borrower-lender relationship is not fiduciary in nature." *Gray v. OneWest Bank, Fed. Sav. Bank*, 2014 WL 3899548, at *10 (D. Haw. Aug. 11, 2014) (quotation marks omitted); *see also McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763, at *5 (D. Haw. Nov. 17, 2010) (citing cases); *Anderson v. Cent. Pac. HomeLoans, Inc.*, 2011 WL 3439939, at *6 (D. Haw. Aug. 8, 2011) ("Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard arms-length business relationship applies.") (citation and quotation marks omitted).

Here, Plaintiff does not allege any facts to support the existence of a special relationship between herself and the lender or either Defendant.  Nor does she allege that she performed under the Mortgage and loan.  That is, she fails to allege that *she* paid the loan amount in full.  Rather, Plaintiff alleges, nonsensically, that BONY Mellon breached paragraph 23 of the Mortgage[9] by failing to release the Mortgage after it allegedly paid the full loan amount to itself. *See* ECF No. 1 at PageID #29.  But Plaintiff alleges no facts to support her conclusory allegation that the loan amount was paid in full—by BONY Mellon or anyone else on her behalf.  Thus, Plaintiff fails to state a plausible claim for breach of contract.  Counts 5 and 6 are DISMISSED.

Although highly unlikely, Plaintiff might be able to allege facts showing a special borrower-lender relationship and/or facts sufficient to state a breach of contract claim.  Thus, Plaintiff is granted leave to amend Counts 5 and 6. In so doing, Plaintiff may include allegations of unconscionability in connection with a breach of contract claim, but, as set forth above, she may not assert a *separate* claim for unconscionability.

---

[9] Paragraph 23 of the Mortgage provides, in part: "Release.  Upon payment of all sums secured by this Security Instruction, Lender shall release this Security Instrument."  ECF No. 23-3 at PageID #140.

17

**F.      Counts 7 and 9: "Quiet Title" and "Declaratory Relief"**

In Counts 7 and 9, Plaintiff seeks to quiet title to the subject property and a court declaration confirming her right to quiet title.

A "separate declaratory relief claim should not be used . . . to determine identical issues subsumed within other claims." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (dismissing separate "declaratory relief claim [as] entirely duplicative of [the plaintiff's] other claims" because the "resolution of [the plaintiff's] quiet title claim will necessarily determine who owns [the plaintiff's] Subject property"); *see Singh v. Shellpoint Morg. Serv.*, 2019 WL 5902111, at *3 (D. Or. Nov. 11, 2019) (citing cases).  Here, Plaintiff's claim for declaratory relief is duplicative of her claim to quiet title.  Thus, Count 9 is DISMISSED without leave to amend.

To state a plausible quiet title claim, Plaintiff must allege that she "has a substantial interest in the property; and [her] title is superior to that of the defendants." *Carpenter v. PNC Bank, N.A.*, 386 F. Supp. 3d 1339, 1347 (D. Haw. 2019) (quoting *Ka'Upulehu Land LLC v. Heirs & Assigns of Pahukula*, 136 Haw. 123, 137, 358 P.3d 692, 706 (2015) (internal quotation marks omitted)).  Thus, "a quiet title claim against a mortgagee . . . requires an allegation that Plaintiff[] [has] paid, or [is] able to tender, the amount of indebtedness." *Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1262-63 (D. Haw. 2012) (brackets, internal

18

quotation marks, and citation omitted).  Moreover, pursuant to Hawaii Revised Statutes § 506-1, the Mortgage "create[d] a lien as security for [the loan]," which, upon default, provides the mortgagee a possessory interest in the secured property until the loan is paid or the property foreclosed upon.  *See Lizza v. Deutsche Bank Nat'l Tr. Co.*, 1 F. Supp. 3d 1106, 1114 (D. Haw. 2014).

The Complaint fails to allege that Plaintiff tendered or is presently able to tender the full outstanding loan amount.  Rather, at most, it alleges that BONY Mellon "was paid in full for [its] Accommodated capacity to the Tangible Note and Mortgage/Deed of Trust when it sold and relinquished its interest in the Plaintiff's real property to [BONY Mellon]."  ECF No. 1 at PageID #29.  But as noted above, this allegation is nonsensical and cannot be construed as asserting that *Plaintiff* has satisfied her mortgage debt.  Further, Plaintiff concedes that an Assignment of the Mortgage to BONY Mellon was recorded on March 22, 2018, and alleges that BONY Mellon claims that she has defaulted on the loan.  *See id.* at PageID #4, 22.  Thus, pursuant to HRS § 506-1, any interest Plaintiff has in the subject property is subject to BONY Mellon's lien until the loan is paid in full.  *See Lizza*, 1 F. Supp. 3d at 1114.

In short, Plaintiff has failed to allege a plausible claim to quiet title, and thus, Count 7 is DISMISSED with leave to amend.

**G.     Count 8: "Slander of Title"**

Under Hawaii law, to state a claim for slander of title, Plaintiff must

allege:

> (1) ownership of or interest in the property by the
> plaintiff; (2) falsity of the words published; (3) malice of
> the defendant in publishing the false statements;
> (4) publication to some person other than the owner;
> (5) publication in disparagement of plaintiff's property or
> the title to it; and (6) special damages proximately
> resulting from such publication.

*Isobe v. Sakatani*, 127 Haw. 368, 377-78, 279 P.3d 33, 42-43 (Haw. Ct. App.

2012) (citation omitted).  "Malice is established by showing that a party made a

false statement, with full knowledge of its falsity, for the purpose of injuring the

complainant."  *Id.* at 380, 279 P.3d at 45 (quoting 50 Am Jur. 2d Libel and Slander

§ 531 (2006)).

Here, Plaintiff alleges that Defendants withheld certain facts by failing

to record "Secret Liens" and therefore, "[t]he act of recording the purported March

22, 2018 Assignment . . . is a communication to a third party of [a] false statement

derogatory to Plaintiff's title made with malice causing special damages

to . . . Plaintiff's claim of title."  ECF No. 1 at PageID #33.  Plaintiff's allegation is

wholly conclusory and nonsensical.  That is, she alleges no *facts* establishing the

elements of a slander of title claim.  Thus, Count 7 is DISMISSED with leave to

amend.

### H.     Count 10: Consumer Credit Protection Act

In Count 10, Plaintiff alleges that Defendants violated the Truth in Lending Act's ("TILA") notice provision, 15 U.S.C. § 1641(g),[10] by "refusing to disclose the purported assignments/transfer of the Promissory Note and [Deed of Trust]."  ECF No. 1 at PageID #34-35.

But claims for lack of notice under § 1641(g) must be brought "within one year from the date of the occurrence of the violation."  *See* 15 U.S.C. § 1640(e); *see also Amina v. WMC Finance*, 812 F. App'x 509, 510 (9th Cir. 2020) (Mem.).  Even assuming that the March 22, 2018 recordation of the Assignment is a sufficient triggering occurrence and that Defendants failed to notify Plaintiff of the Assignment, Plaintiff's claim was filed more than one year later, on July 11, 2019, and thus is untimely.  Equitable tolling may apply under limited circumstances.  *See King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("[T]he doctrine of equitable tolling may . . . suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the . . . nondisclosures that form the basis of the TILA action.").  Plaintiff, however, alleges no basis for tolling, nor could she.  Recordation of an assignment

---

[10] Section 1641(g)(1) requires that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ."

generally "operates as constructive notice of the contents thereof, to all persons," thereby precluding application of equitable tolling. *Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1166 n.25 (D. Haw. 2018) (quoting *Aguirre v. Cal-Western Reconveyance Corp.*, 2012 WL 273753, at *6 (C.D. Cal. Jan. 30, 2012) (other citation omitted)); *see also In Re Davis*, 565 F. App'x 630, 633 (9th Cir. 2014). And courts have declined to apply equitable tolling based on no more than the "mere existence of TILA violations and lack of disclosure." *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) (citing cases).

Count 10 is DISMISSED as time-barred. And because amendment would be futile, Plaintiff's TILA claim is DISMISSED without leave to amend.

## I.    Count 11: "Violation of Federal Regulations, Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A)"

In Count 11, Plaintiff alleges that BONY Mellon and other non-party entities, i.e., "CitiMortgage, Inc." and "Bank of America, N.A.," violated certain loss mitigation provisions of the Real Estate Settlement Procedures Act's ("RESPA") implementing "Regulation X," 12 C.F.R. § 1024.41(b). *See* ECF No. 1 at PageID #35-38. Section 1024.41(b) sets forth procedures that a loan servicer must follow when it receives a borrower's application for loan mitigation.

But Plaintiff fails to allege any facts to support her claim. Rather, Count 11 recites the requirements imposed by § 1024.41(b) and concludes that BONY Mellon failed to satisfy those requirements. *See id.* Such conclusory

allegations fall far short of alleging the necessary *facts* to state a plausible claim for relief.  For example, although Plaintiff alleges that she "attempted a series of attempts to get a loan modification," she fails to allege the date(s) and to whom she submitted any application(s).  *Id.* at PageID #9.  Rather, Plaintiff alleges that she submitted qualified written requests ("QWR")[11] on "4/19/2011, and 7/18/2012." *Id.*  But a QWR is not an application for a loan modification, and submission of a QWR triggers different obligations from a loan servicer, which are set forth under a different provision of Regulation X—12 C.F.R. § 1024.36.  Further, RESPA claims for violation of 12 C.F.R. § 1024.41(b) are subject to a three-year statute of limitations.  Section 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA," i.e., 12 U.S.C. § 2605(f).  And 12 U.S.C. § 2614 provides that claims pursuant to § 2605 must be brought "within 3 years . . . from the date of the occurrence of the violation[.]" Thus, to the extent Count 11 alleges a violation based on Plaintiff's submission of QWRs in 2011 and 2012, it time-barred.

---

[11] A QWR is defined as:

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(B).

And finally, Plaintiff fails to allege actual damages resulting from the alleged violation of § 1024.41(b).  *See, e.g.*, *Vethody v. Nat'l Default Servicing Corp.*, 2017 WL 3335970, at *3 (N.D. Cal. Aug. 4, 2017) (dismissing § 1024.41(b) claim because the plaintiffs "fail[ed] to plead actual damages caused by the RESPA violation").  Here, Plaintiff alleges only that "Defendant's unlawful conduct has caused Plaintiff's damages in an amount to be proven at trial."  This wholly conclusory allegation does not suffice.

Accordingly, Plaintiffs' claim for violation of § 1024.41(b) is DISMISSED with leave to amend.

## J.     Leave to Amend

Plaintiff is granted leave to amend her claims for wrongful foreclosure, fraud, breach of contract, breach of fiduciary duty, quiet title, slander of title, and violation of RESPA's Regulation X, 12 C.F.R. § 1024.41(b).

Plaintiff may file a First Amended Complaint by September 18, 2020 to attempt to cure the deficiencies set forth above.  If Plaintiff chooses to file an amended complaint, she must (1) allege the basis of this court's jurisdiction, (2) state each claim she is making against a specific Defendant, (3) for each claim, allege all the facts, legal theories, and exhibits supporting that claim, (4) allege what specific injury she suffered because of that Defendant's conduct, (5) state what specific relief she seeks, and (6) repeat this process for each Defendant.  In

24

other words, Plaintiff should explain, in clear and concise allegations, what each Defendant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific cause of action.  In addition, Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "First Amended Complaint," and it may not incorporate any part of the original Complaint by reference.  Plaintiff may include only one claim per count.  Any cause of action that is dismissed with leave to amend that is not raised in the Fist Amended Complaint is waived.  *See id.*  Failure to file an amended complaint by September 18, 2020 will result in automatic dismissal of this action.

# V.  **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED, ECF No. 23.

Plaintiff's claims for lack of standing, unconscionable contract, declaratory relief, and for violation of 15 U.S.C. § 1641(g) are DISMISSED without leave to amend.

Plaintiff's claims for wrongful foreclosure, fraud in the concealment, fraud in the inducement, breach of contract, breach of fiduciary duty, quiet title, slander of title, and violation of RESPA's Regulation X, 12 C.F.R. § 1024.41(b) are DISMISSED with leave to amend.

Plaintiff is GRANTED leave to file a First Amended Complaint to attempt to cure the deficiencies identified above on or before September 18, 2020.

///

///

///

///

///

///

Failure to file a First Amended Complaint by September 18, 2020 will result in automatic dismissal of this action for failure to prosecute and failure to comply with a court order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 20, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Richardson v. BONY Mellon, et al.*, Civ. No. 19-00374 JMS-WRP, Order Granting Defendants' Motion to Dismiss, ECF No. 23

27